# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

FRED CORREA,                                  Case No. 1:17-cv-300

        Plaintiff,                          Barrett, J.
                                              Bowman, M.J.

    v.

MR. CULLUM, et al.,

        Defendants.


## REPORT AND RECOMMENDATION

Plaintiff, an incarcerated individual at the Southern Ohio Correctional Facility ("SOCF") who proceeds *pro se*, tendered a complaint against two prison officials and the prison food service on May 4, 2017.  On May 10, 2017, the undersigned granted Plaintiff leave to proceed *in forma pauperis*, and on June 12, 2017, Plaintiff was granted leave to file an amended complaint to identify the "John Doe" Defendant and correct the spelling of Defendants' names.

Currently pending before the undersigned are five motions:  (1) Plaintiff's motion to compel discovery (Doc. 25); (2) Defendants' joint motion to stay discovery (Doc. 30); (3) Plaintiff's motion to further amend/correct his complaint (Doc. 31); (4) Aramark's motion for judgment on the pleadings (Doc. 33); and (5) the motion of Defendants Cullum and Joiner for judgment on the pleadings (Doc. 41).  For the reasons that follow, the undersigned recommends granting the Defendants' two dispositive motions, and denying Plaintiff's motion to further amend.  The remaining non-dispositive motions will be denied as moot.

## I.    Background

Plaintiff generally alleges that the SOCF kitchen area where his food is prepared is unsanitary, in part due to a roach and rat infestation that has not been appropriately treated.    Plaintiff specifically complains about three food service incidents: (1) on February 6, 2017, he inadvertently consumed two rat legs in his food; (2) on February 12, 2017 he observed rat feces on his dinner tray; and (3) on April 16 or 17, 2017, he swallowed a piece of glass that was in his dinner.

The focus of the complaint is on the first incident on February 6, 2017.  Plaintiff alleges that he choked on a "hard object" that he believes to be a "mutilated rat leg."  He complained to Defendant Correctional Officer Cullum and requested that he call a nurse, but Officer Cullum declined, retorting "it sucks to be you." (Doc. 3 at ¶14).  He alleges that thirty minutes later, he vomited and found an "additional rat leg in his food," and subsequently informed Cullum "of the consumption and vomiting of an additional rat leg, [again] requesting medical [attention]." (*Id.* at ¶¶15-16).  Plaintiff again requested but was refused medical assistance by Cullum.

During pill call later that day, Plaintiff informed the nurse of the incident, but the nurse "simply told Correa to drink water and walked off." (*Id.* at ¶18).  Later that evening Plaintiff alleges that he filed an informal complaint and turned in a health services request due to his unsettled stomach.

On February 8, 2017, in response to his request, Plaintiff was examined by Defendant Nurse Joiner.  Plaintiff requested a further examination by a physician "to be sure he didn't contract any diseases."  However, Joiner "assured Correa he was fine

and only over-reacting," telling him that "people hunt and eat rats all the time." She prescribed "anti-gas tablets" for his stomach, but denied his request to see a physician for an "official" and more complete examination including blood work. (*Id.* at ¶22). After Joiner declined his request for a visit with a physician and blood work, Plaintiff alleges that his symptoms "later evolved into intolerable stomach aches and nausea." (*Id.*) Plaintiff alleges he began to fear for his life due to the possibility that he had contracted a deadly disease from his ingestion of the rat legs. (*Id.* at ¶24). Plaintiff turned in three additional sick call slips concerning the rat leg incident, for "intolerable stomach aches and severe nausea," on February 11, February 17, and March 1, 2017, but alleges that no further treatment was provided. (*Id.* at ¶¶25, 31).

Attached to Plaintiff's complaint is a response to Plaintiff's institutional grievance and appeal, which states that Nurse Joiner assessed Plaintiff as "normal" after the rat incident and, after providing "Mintox," instructed Plaintiff to follow up "if any further issues." The response alludes to medical treatment on February 13, 2017 and February 17, 2017 at which Plaintiff was allegedly examined for shoulder issues and "made no other complaint." (Doc. 3-1 at 26). However, Plaintiff denies that Joiner advised him to follow up, denies the receipt of additional treatment in February,[1] and asserts that he continued to request treatment "concerning the consumption of the rat legs" to no avail.

---

[1]Regardless of the referenced dispute over the February treatment, not all of Plaintiff's requests for additional treatment have been ignored. In fact, Plaintiff seeks to further amend his complaint to complain about additional medical treatment received on April 17, 2017 from a Nurse Practitioner (Conley), and on May 1, 2017 from a dentist concerning his complaint of a shard of glass causing a cut to his gum. Plaintiff complains that on April 17, the Nurse Practitioner failed to document the cut because his examination was too brief. (Doc. 31-1 at ¶11). Plaintiff allegedly signed up for a dental visit in order to properly document his injury, but complains that treatment also was inadequate insofar as the dentist documented a small area of scar tissue on his lower gum, but determined no treatment was needed. (*Id.* at ¶13)

(*Id.* at ¶¶26-27; Doc. 3-1 at 27). On April 21, 2017, he alleges that he submitted a general complaint that he was not medically seen after turning in requests for treatment to sick call. (*Id.* at ¶33).

Plaintiff's allegations regarding the second and third incidents are more succinct. Plaintiff alleges that a second incident occurred on February 12, 2017, when he observed what appeared to be a piece of "rat feces" on a portion of the tray on which his dinner was served. Plaintiff made complaints to the warden, and to the supervisor of Aramark Food Services on the same day. (*Id.* at ¶¶29-30).

A third incident occurred on April 17, 2017, when Plaintiff alleges that he consumed "glass through the consumption of that night's dinner." (*Id.* at ¶32). He alleges that the shard of glass cut his gum, but does not allege that he required any medical attention. A Declaration attached to his complaint admits that the glass "didn't cause significant injury to my intestines nor cause injury when empties," but nonetheless "did cause discomfort when ingested…." (Doc. 3-1 at 49). He alleges that he filled out an informal complaint to the health and safety coordinator. (*Id.* at ¶32). A response reflects that he was checked by medical staff who found no injury to his mouth or gums. (Doc. 3-1 at 45).

Plaintiff alleges that the food service provider, Defendant Aramark, exhibited deliberate indifference to Plaintiff's right to a "safe, sanitary and humane conditions," in violation of the Eighth Amendment, and that Aramark failed to supervise, prepare, and distribute food under humane, sanitary and safe conditions, causing Plaintiff "serious harm." (*Id.* at ¶¶36, 38). He further alleges that individual Defendants Joiner and

Cullum exhibited deliberate indifference to his serious medical needs, resulting in unnecessary pain and suffering in violation of the Eighth Amendment. (*Id.* at ¶¶39-41). Finally, he generally alleges "retaliation" as a result of the complaints he made. Plaintiff seeks both monetary damages and permanent injunctive relief against all three Defendants.

## II. Standard of Review

A motion to dismiss under Rule 12(b) for failure to state a claim upon which relief may be granted ordinarily is filed in lieu of an Answer. However, the same defenses may be presented in a motion for judgment on the pleading sunder Rule 12(c) after pleadings are closed.

A district court reviews a Rule 12(c) motion for judgment on the pleadings under the same standard applicable to a Rule 12(b)(6) motion to dismiss. *EEOC v. J.H. Routh Packing Co.,* 246 F.3d 850, 851 (6th Cir. 2001). In considering a motion to dismiss, the Court must "construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.,* 508 F.3d 327, 336 (6th Cir. 2007). While such determination rests primarily upon the allegations of the complaint, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc.,* 108 F.3d 1546, 1554 (6th Cir. 1997)) (emphasis omitted).

## III.    Aramark's Motion for Judgment on the Pleadings

Aramark argues that it is entitled to judgment on the pleadings because Plaintiff's allegations against Aramark fail to state an Eighth Amendment claim.  I agree.

The Eighth Amendment requires prison officials "to provide humane conditions of confinement" and to "ensure that inmates receive adequate food, clothing, shelter, and medical care...." *Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970 (1994). However, "extreme deprivations are required to make out a conditions-of-confinement claim ... [b]ecause routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.' " *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir.1987). Rather, "[t]he Eighth Amendment is concerned only with 'deprivations of essential food, medical care, or sanitation,' or 'other conditions intolerable for prison confinement.'" *Richmond v. Settles*, 450 Fed. Appx. 448, 455–56 (6th Cir.2011) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 348, 101 S.Ct. 2392 (1981)).

To establish an Eighth Amendment violation, a plaintiff must first demonstrate objectively the unique deprivation of "the minimal civilized measure of life's necessities." *Id.* at 454 (quoting *Rhodes*, 452 U.S. at 347); *see also Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir.2000) (citing *Farmer*, 511 U.S. at 834) ("[T]he inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm."). He then must

subjectively show the defendant acted "wantonly," with "deliberate indifference to the plaintiff's serious needs." *Richmond*, 450 Fed. Appx. at 455 (citing *Farmer*, 511 U.S. at 834).

### A. Failure to Show Objective Component

In order to prove the objective element, Plaintiff must demonstrate that the harm to which he was subjected was "objectively, sufficiently serious," such "a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities,'" *Farmer v. Brennan*, 114 S.Ct. at 1977 (quoting *Rhodes, supra*, 452 U.S. at 347, additional internal quotation marks and citations omitted). Put another way, for a claim "based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834 (additional citation omitted).

Plaintiff alleges that he was subjected to an objectively serious condition through Aramark's deficient food service. "In general, the severity and duration of deprivations are inversely proportional, so that minor deprivations suffered for short periods would not rise to an Eighth Amendment violation, while 'substantial deprivations of shelter, food, drinking water, and sanitation' may meet the standard despite a shorter duration." *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001)(internal citation omitted); *see also Hutto v. Finney,* 437 U.S. 678, 685, 98 S.Ct. 2565 (1978). For example, "[a] filthy, overcrowded cell and a diet of 'grue' might be ... intolerably cruel for weeks or months" but tolerable for several days. *Id.* at 686–687.

Aramark argues that, accepting Plaintiff's allegations at face value, his assertion that he inadvertently ingested foreign material found in his food on two occasions (the rat legs on February 6, 2017 and the shard of glass on April 17, 2017) are simply too few in number, too isolated in time, and resulted in too little injury to demonstrate a plausible claim for an objectively sufficiently serious deprivation of sanitary and edible food. The additional consideration of the third incident on February 12, 2017, on which Plaintiff observed rat feces on the tray on which his meal was served, does not push Plaintiff's claim over the threshold of showing the type of "extreme" deprivation of sanitary food that would state a constitutional violation under prevailing law.

Based upon a review of relevant case law, the undersigned agrees that the three referenced incidents over the course of two and a half months do not rise to the level of a constitutional deprivation. While the objective component of an Eighth Amendment claim could be stated if the food is so inedible that it exposes an inmate to serious harm on a sustained basis, Plaintiff's allegations as a whole reflect a less extreme deprivation. A review of the case law reflects broad acceptance of the reality that the provision of the occasional disgusting, inedible, or unsanitary meal – even one that results in food poisoning - does not satisfy the "objective" component of an Eighth Amendment claim, particularly where no significant injury resulted. Thus, courts routinely dismiss claims that allege only occasional incidents of foreign objects discovered in prison food.

For example, in *Balcar v. Smith*, 2017 WL 380931 (W.D. Ky. Jan. 26, 2017), an inmate alleged that Aramark Food Service served him unhealthy, inadequate and

unsanitary food, prepared in an unsanitary roach and rat infested environment, and including food that contained hair and rat feces, meat that was raw, and food that was nutritionally inadequate. The district court held that Plaintiff's allegations failed to state an Eighth Amendment violation. "The fact that the [prison] food occasionally contains foreign objects or is sometimes served cold, while unpleasant, does not amount to a constitutional deprivation." *Balcar*, 2017 WL 380931 at *4 (quoting *Smith v. Younger*, 1999 U.S. App. LEXIS 20168 at *5 (6th Cir. Aug. 9, 1999)) The Sixth Circuit agreed:

> Isolated exposure to foreign bodies in food, including those of rodents and insects, does not constitute an Eighth Amendment violation. *See Smith v. Younger*, No. 98–5482, 1999 WL 623355, at *2 (6th Cir. Aug. 9, 1999) (citing *Hamm v. DeKalb Cty.*, 774 F.2d 1567, 1575 (11th Cir. 1985)). Moreover, the isolated nature of finding such foreign objects and the length of exposure to them are significant. *See Lamb v. Howe*, —— Fed. Appx. ——, 2017 WL 318790, at *5 (6th Cir. Jan. 23, 2017); *see also DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001). "A filthy overcrowded cell and diet of 'grue' might be tolerable for a few days and intolerably cruel for weeks or months." *Hutto v. Finney*, 437 U.S. 678, 686–87 (1978).
>
> The nature of the inconveniences presented in Balcar's claims regarding foreign bodies in his food and the presence of rodents and insects in the kitchen area, while serious, were occasional according to his complaint, did not result in any alleged injury, and did not consistently create conditions that fell below the "minimal civilized measure of life's necessities as measured by a contemporary standard of decency." *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001).

*Balcar*, 2017 WL 3613479, at *1–2 (6th Cir. July 7, 2017); *see also Kilgore v. Thompson*, 2015 WL 13273315 at *6 (E.D. Ky. Oct. 13, 2015)(collecting cases and concluding that "occasional or episodic incidents of contaminated food or unclean food areas are not constitutional violations"); *Newsom v. Hall*, 2012 WL 3579547 at *3 (M.D. Tenn. Aug. 17, 2012)("The Court therefore finds that his allegations regarding the insect

in his food and the sight of insects in the dining room do not rise to the level of a constitutional violation"); *Kennibrew v. Russell*, 578 F. Supp. 164, 168 (D.C.Tenn.1983) (noting that the Sixth Circuit has stated that a complaint about the preparation or quality of prison food is "generally far removed from Eighth Amendment concerns," quoting *Cunningham v. Jones*, 567 F.2d 653, 659-660 (6th Cir. 1977)); *Freeman v. Trudell*, 497 F. Supp. 481 (E.D. Mich. 1980)("[a]n occasional incident of a foreign object finding its way into the food, while regrettable, does not raise a question of constitutional proportion")(internal quotation marks and additional citation omitted"); *Lovern v. Cox,* 374 F. Supp. 32, 35 (W.D.Va. 1974).

In his response in opposition to Aramark's motion, Plaintiff argues generally that his food was so "routinely unsanitary that it presents an immediate threat to his safety," because it was not "nutritionally adequate." However, there are no allegations in his complaint that he was denied edible food so routinely that he lost weight or suffered any other significant illness.[2] A broad allegation of nutritional deficiency, without more detail, is insufficient to support an Eighth Amendment claim. *See, e.g.*, *Sims v. Mich. Dep't of Corr.*, 23 Fed. Appx. 214, 215-16 (6th Cir. 2001) (rejecting Eighth Amendment claim based on assertion that the plaintiff received only one cup of fruit as one of the six meals he received in one day); *Price v. Jones*, 2012 WL 1854299, at *4 (S.D. Ohio May

---

[2]Even if he had included such allegations, courts have found a lack of any cognizable claim in the absence of extreme deprivation. *Witschi v. N.C. Dep't of Pub. Safety*, 2014 U.S. Dist. LEXIS 103300, at *7, 2014 WL 3735135 (W.D.N.C. July 29, 2014) (finding no Eighth Amendment claim despite Plaintiff's allegation that he was not being fed a sufficient diet because he did not allege facts suggesting that his health had deteriorated as a result of his diet regimen); *Kemp v. Drago*, 2013 U.S. Dist. LEXIS 113430, *21, 2013 WL 4874972 (D.S.C. Sept. 11, 2013) (holding that "Plaintiff's allegation of a seventeen-pound weight loss does not state a cognizable claim" of inadequate nourishment).

4, 2012)(dismissal of Eighth Amendment claim based on the plaintiff's failure to allege his health suffered as a result of alleged inadequacies in prison meal plan).

It is worth noting that analogous allegations of spoiled or moldy food have been held not to state a sufficiently "extreme" deprivation under the Eighth Amendment. *Accord Chavis v. Fairman*, 51 F.3d 275 (7th Cir. 1995)(Table)(occasional service of spoiled food cannot be said to deprive inmates of basic nutritional needs); *Jackson v. Gusman*, 2015 U.S. Dist. LEXIS 136243, at *17-18 (E.D. La. Aug. 31, 2015) (dismissing allegation of being served spoiled food on multiple occasions for failure to state a constitutional claim)(report and recommendation), adopted by 2015 U.S. Dist. LEXIS 136241, 2015 WL 5823295 (E.D. La. Oct. 2, 2015); *Lewis v. Taylor*, 2016 U.S. Dist. LEXIS 128360, 2016 WL 5213943 (N.D. Fla. Aug. 9, 2016)(allegations of service of substandard and spoiled food while in segregation failed to meet objective component of an Eighth Amendment claim).  Likewise, in cases where inmates allege the deprivation of meals, courts have found no Eighth Amendment violation when the deprivation was not deemed to be extreme.  *See Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (*per curiam*) (providing a prisoner only one meal per day for fifteen days did not violate the Eighth Amendment, because the meals provided contained sufficient nutrition to sustain normal health); *Davis v. Miron*, 502 Fed. Appx. 569, 570 (6th Cir. 2012) (denial of seven meals over six days is not an Eighth Amendment violation); *Richmond v. Settles*, 450 Fed. Appx. 448, 456 (6th Cir. 2011) (same).

In addition to his general complaints of "unsanitary" food preparation conditions, which do not demonstrate the objective component of an Eighth Amendment claim,[3] Plaintiff argues that the critical distinction between this case and the cited body of case law is that he inadvertently ingested some portion of at least one of the rat legs, which caused him to suffer an "actual injury ..which he was unable to recover from." (Doc. 35 at 8). In other words, Plaintiff distinguishes his claim on the basis that he ingested contaminants and suffered a sufficiently "serious" harm because he vomited and suffered from nausea.

However, the court dismissed similar allegations in *Velhuysen v. Aramark Correctional Servs., Inc.*, 2017 WL 236191 (W.D. Mich., Jan 19, 2017), a case in which the plaintiff alleged that he was served spoiled and moldy food on four separate occasions, became violently ill with frequent bowl movements and vomiting, high fever, upset stomach, vomiting, nausea and bloody bowel movements for 2-3 days after another meal, and was received yet another deficient meal on a sixth date. Even though two of the incidents were back-to-back days in December and three more were within the same week in August, the court held that all six incidents still constituted only "isolated incidents" that did "not constitute a sufficiently serious deprivation" under the objective component of the Eighth Amendment. *Id.* at *2. The court added:

> Valthuysen's allegation of apparent food poisoning on one occasion, even considered along with his other allegations, still does not allege conduct sufficiently serious to establish an Eighth Amendment violation. In numerous cases, courts have held that a single incident of food poisoning does not amount to an Eighth Amendment violation.

---

[3] *See Jackson v. Aramark*, 2017 WL 3176284, at *3–4 (W.D.Ky. 2017)(collecting cases).

*Id.* at *2 (collecting cases). Likewise, in *Wiley v. Kentucky Dept. of Corrections*, 2012 WL 5878678 (E.D. Ky. Nov. 21, 2012), the court also dismissed an inmate's claim even though he alleged that he vomited and experienced stomach spasms for three days after finding a dead rat in his soup.

> Wiley's allegations do not rise to the level of an Eighth Amendment violation. Courts have consistently held that isolated incidents of foreign bodies, including rodents and insects, surfacing in the food served to prisoners is not an Eighth Amendment violation. *Tucker v. Rose,* 955 F.Supp. 810, 815 (6th Cir.1997) (citing *Estelle v. Gamble,* 429 U.S. 97, 106 (1974)). "The fact that the [prison] food occasionally contains foreign objects or is sometimes served cold, while unpleasant, does not amount to a constitutional deprivation." *Smith v. Younger,* No. 985482, 1999 WL 623355, at *2 (6th Cir. Aug. 9, 1999) (affirming district court's dismissal of plaintiff's Eighth Amendment claim based on the presence of a worm in her peanut butter); *see also, Hamm v. DeKalb County,* 774 F.2d 1567, 1575 (11th Cir.1985); *Miles v. Konvalenka,* 791 F.Supp. 212 (N.D.Ill.1992) (single instance of finding mouse in food not actionable). Wiley's claim about his prison food on May 1, 2011, will be dismissed for failure to state a claim upon which relief can be granted.

*Wiley,* 2012 WL 5878678, at *8 (E.D.Ky. 2012); *see also Johnson v. Kilgore*, 2006 WL 42281, * 4 (W.D.Va. Jan.6, 2006)(Because "minor weight fluctuations and occasional bouts of diarrhea and vomiting are normal occurrences in life and can be attributed to stress and minor illness," they are insufficient to support an Eighth Amendment claim.); *accord Fox v. Mayfield Graves Co. Detention Center*, 2015 WL 1438447 (W.D.Ky. March 27, 2015)(single instance of food poisoning from maggot-infested food insufficient to state claim); *Payne v. Mohr*, 2011 WL 4712086 (same);

Like the inmates in the referenced cases, Plaintiff alleges only three instances of unsanitary conditions impacting his food over a two and a half month period – two involving foreign objects in his meals, and a third involving his discovery of rat feces on

the tray on which his food was being served.  He alleges that he vomited after ingesting

rat legs (the first incident), and that his nausea and stomach pain have persisted, but

alleges no weight loss or significant injury other than a fear of having been exposed to a

rat-borne disease.  He alleges no injury from the discovery of the rat feces.  And he

alleges only a cut on his gum that caused "discomfort" from the ingestion of glass, but

did not require any medical attention. (See Doc. 3-1, response to informal complaint,

stating that medical staff found no injury to mouth or gums; Doc. 3-1 at 49, conceding

no injury).  Taken as a whole, these allegations do not show an objectively "serious"

deprivation of "essential food, medical care, or sanitation."  *Rhodes*, 452 at 348; *see

also Leonard v. Smoot*, 2013 WL 1755750 (S.D. Ohio 2013)(potential exposure to

infectious diseases as a result of unsanitary food service procedures insufficient to

demonstrate sufficiently serious deprivation).

### B.  Subjective Component

Even if Plaintiff were able to satisfy the objective component of an Eighth

Amendment claim against Aramark, Aramark would still be entitled to judgment on the

pleadings based upon Plaintiff's failure to include allegations that would demonstrate

the subjective element of his Eighth Amendment claim.  Deliberate indifference requires

a "state of mind more blameworthy than negligence." *Farmer,* 511 U.S. at 835.  To

recover under the Eighth Amendment, Plaintiff must show that Aramark subjectively

perceived facts from which it inferred a substantial risk existed to Plaintiff of serious

harm, actually drew that inference, and then disregarded the risk.  The Supreme Court

has long rejected "a reading of the Eighth Amendment that would allow liability to be

imposed on [defendants] solely because of the presence of objectively inhumane prison conditions." *Farmer*, 114 S.Ct. at 1979 (quoting *Wilson v. Seiter*, 501 U.S. 294, 299-300, 111 S. Ct. 2321, 2324-2326 (1991)); *see also Krutko v. Franklin County, Ohio*, 559 Fed. Appx. 509, 511 (6th Cir. 2014)(remanding to district court to conduct an individualized inquiry to determine whether any of the defendants were entitled to qualified immunity based upon the evidence presented as to the defendants' subjective state of mind).

As Aramark is quick to point out, nowhere in his complaint does Plaintiff allege that Aramark was deliberately indifferent to any substantial risk of serious harm to Plaintiff. Plaintiff does not allege in his compliant that Aramark knew of and deliberately included foreign bodies in his food on February 6 or April 17, that it was aware of the rat feces on his tray on February 12, or the shard of glass that appeared in his food in April. Thus, Plaintiff's complaint fails to make a sufficient factual showing that Aramark acted with the requisite subjective intent to demonstrate an Eighth Amendment violation.

Plaintiff also does not allege that Aramark was in any way responsible for whatever infestation may have existed in the prison, or that Aramark was responsible for treatment of the infestation, as opposed to other prison sanitation services. To the contrary, Plaintiff alleges that it was "SOCF officials" who "acknowledge[d] the roach and rat infestation and still [chose] not to act appropriately." (Doc. 3 at ¶7). In the absence of any allegations involving unconstitutional behavior by Aramark, as opposed to mere negligence in its food preparation, Plaintiff has failed to state an Eighth Amendment claim against Aramark.

In his response in opposition, Plaintiff has attempted to introduce additional allegations and evidence, in the form of a declaration by a fellow inmate, Donnell Perry, that he observed an Aramark pull out a "partial rat" from a food tray prepared on February 6, 2017, but was chastised by the Aramark employee and prevented from discarding the entire food tray that was contaminated. (Doc. 35-1 at 2). Aramark objects to the consideration of this new evidence, because in deciding a motion for judgment on the pleadings, a court is confined to considering the pleadings, the affidavits and exhibits that Plaintiff attached to his complaint, and documents that are expressly referenced in the complaint.

Technically, Aramark is correct. To the extent that this Court does not convert Aramark's Rule 12(c) motion to a Rule 56 motion for summary judgment, the newly presented evidence attached to Plaintiff's memorandum in opposition cannot be considered, and thus does not overcome the fact that Plaintiff's complaint fails to allege the requisite subject intent by Aramark.

However, even if the new declaration is considered and the motion is construed under Rule 12(b)(6), Aramark would still be entitled to judgment as a matter of law because the allegations in the declaration fall short of showing "deliberate indifference" by *Aramark*. Taking Perry's allegations as true, the alleged actions of the Aramark worker in choosing to continue serving the food from the contaminated pan falls short of meeting the Eighth Amendment standard. Aside from the question of whether the Aramark employee in question acted with the requisite bad intent and specifically perceived, but disregarded, a serious risk to the health of SOCF prisoners who would

receive the meal, the Declaration fails to show any broader policy or custom or intent by Aramark, the corporation.  As another court explained:

> Plaintiff's claim against Aramark fails because the corporation cannot be liable for individual employees' actions based upon a theory of *respondeat superior* or vicarious liability. It is well established that a plaintiff bringing an action pursuant to § 1983 cannot premise liability upon a theory of *respondeat superior* or vicarious liability. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). A plaintiff that sues a private or public corporation for constitutional violations under § 1983 must establish that a policy or custom caused the alleged injury. *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 904 (6th Cir. 1998); *Street*, 102 F.3d at 818. The Sixth Circuit has specifically held that like a municipal corporation, a private corporation's "liability must also be premised on some policy that caused a deprivation of [a prisoner's] Eighth Amendment rights." *Starcher v. Corr. Med. Sys., Inc.*, 7 Fed.Appx. 459, 465 (6th Cir. 2001). Plaintiff has pleaded no facts supporting his allegation that the rocks in his taco were the result of a policy or custom on the part of Aramark. Thus, because Aramark is not liable under a theory of *respondeat superior* for individual employees' alleged deliberate indifference to Plaintiff's medical needs, Plaintiff's complaint is properly dismissed.

*Spates v. Aramark Food Service*, 2016 WL 4136528, at *2 (W.D.Mich. 2016) (dismissing suit as failing to state Eighth Amendment claim against Aramark where foreign objects caused broken teeth and sensitivity for two months, requiring surgery).

Because Plaintiff has failed to state an Eighth Amendment claim against Aramark, the Defendant is also entitled to judgment on the pleadings on Plaintiff's claims for injunctive relief and/or for punitive damages.

**IV.  The Motion of Defendants Joiner and Cullum for Judgment on the Pleadings**

**A. Plaintiff's Conditions-of-Confinement Food Service Claim Against Cullum and Joiner**

Plaintiff alleges that Defendant Cullum told him, "it sucks to be you," and refused to summon medical assistance for Plaintiff on February 6, 2017, when Plaintiff first discovered the rat legs. Plaintiff further alleges that Defendant Joiner refused to provide adequate medical treatment for his condition, instead providing only "anti-gas" medication for his stomach, telling him he was over-reacting and would be fine, and refusing to schedule a physician visit for a more complete examination and blood work. Thus, the primary allegations against the individual Defendants relate to the alleged failure of medical care, and not directly to the provision of food service. Neither Defendants Cullum nor Joiner is alleged to have played any role in causing Plaintiff to be served contaminated meals on February 6 and April 17, 2017, nor are they alleged to have caused rat feces to be placed on Plaintiff's dinner tray on February 12, 2017. Based upon their lack of involvement, as well as for the reasons for which Aramark is entitled to judgment on the pleadings on the "conditions of confinement" claim involving the food that Plaintiff received, Defendants Joiner and Cullum are entitled to judgment on the pleadings on the same claim.

### B. Plaintiff's Claim of Deliberate Indifference to Serious Medical Need Against Defendants Cullum and Joiner

### 1. Defendant Cullum

Defendant Cullum also is entitled to judgment on the pleadings on any additional claim that he exhibited deliberate indifference to Plaintiff's serious medical needs or retaliated against Plaintiff. In his response in opposition to the joint motion of Defendants Cullum and Joiner to dismiss his claims, Plaintiff requests "that this court does in fact remove Defendant Cullum from this suit/action." (Doc. 43 at 3). Thus it

appears that Plaintiff is voluntarily dismissing the Defendant.

Even if Plaintiff continued his claim, however, the allegations fail to state a claim against Cullum, who is accused only of making a sarcastic comment and failing to summon immediate medical attention on February 6. Assuming that Cullum was made aware that Plaintiff had vomited, there is nothing to suggest that Cullum was aware that the circumstances posed any serious health risk to Plaintiff. Plaintiff was actually seen at pill call later that same evening and told to drink water, and was again seen by Nurse Joiner on February 8. In addition, Plaintiff's allegation that Cullum failed to write an incident report fails to state any claim for relief under 42 U.S.C. §1983. *See Mitchell v. McNeil*, 487 F.3d 374, 378 (6th Cir. 2007). Plaintiff suffered no harm from that action, since Plaintiff himself wrote an informal complaint, and there was a full investigation of the incident. (*See* Doc. 3-1).

### 2. Nurse Joiner

Plaintiff alleges that he was seen by Nurse Joiner on February 8, in response to his health services request for medical attention. He alleges that he explained his health concerns, due to his inadvertent consumption of rat legs that appeared to be in a "fairly fresh state," with possible blood-borne contaminants. Plaintiff alleges that Nurse Joiner prescribed anti-gas medication for his stomach, but refused his request for a more "official" examination by a physician, along with blood work, to verify that he had not contracted any diseases. Instead, Nurse Joiner told him he was "over-reacting" and would be fine. Later, after his visit with Nurse Joiner, Plaintiff alleges that his "stomach ache evolved into intolerable stomach aches and nausea that became severe." (Doc.

19

43 at 1; *see also* Doc. 3 at ¶23).  As a result, Plaintiff alleges that he submitted three additional health services requests for treatment on February 11, February 17, and March 1, 2017, but that he did not receive a response to any of the three requests.

Defendant Joiner is entitled to judgment as a matter of law because Plaintiff cannot show that she was aware of a "serious" medical need, defined as one "that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Jones v. Muskegon County*, 625 F.3d 935, 941 (6th Cir. 2010)(quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)).  At the time Joiner observed Plaintiff on February 8, he alleges that he felt nauseous and had a stomach ache.  He states that he requested the medical attention after vomiting on February 6, and after continuing to experience stomach discomfort.  Plaintiff's main complaint against Defendant Joiner concerns her refusal on February 8 to refer him for a more complete medical work-up with a physician based upon his fear that he may have contracted some form of rat-borne illness.  However, Plaintiff does not allege any worsening symptoms until *after* Defendant Joiner prescribed anti-gas tablets and reassured him he should be fine.  At the time Nurse Joiner saw Plaintiff, his symptoms were not objectively "serious."

The allegations against Nurse Joiner do not reflect anything more than (at most) negligence.  She did not ignore Plaintiff's complaints of stomach upset, but prescribed medication that she believed to be appropriate based upon his symptoms at that time.  Her alleged comments clearly evince an attempt to reassure Plaintiff, and reflect precisely the opposite of the subjective component of an Eighth Amendment claim.

"[T]o prove the required level of culpability, a plaintiff must show that the official: (1) subjectively knew of a risk to the inmate's health, (2) drew the inference that a substantial risk of harm to the inmate existed, and (3) consciously disregarded that risk." *Jones*, 625 F.3d at 941 (additional citations omitted).  When a claim is filed against a prison medical provider, courts will generally find deliberate indifference "where there is evidence tending to establish that the physician [or nurse] is present while the inmate is in distress, that distress is communicated to the physician, and the physician purposefully ignores the distress knowing that an adverse outcome is likely to occur." *Jones*, 625 F.3d at 945.  A misdiagnosis will not amount to an Eighth Amendment claim. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Jones*, 625 F.3d at 945.   Plaintiff admits that he is "ultimately alleging that his medical care, in his opinion, has been inadequate." (Doc. 43 at 3).  Although it is clear that Nurse Joiner denied Plaintiff's request for a full examination by a physician and blood work based upon his expressed concerns for his "health for the future," (Doc. 43 at 2), a difference of opinion over the appropriate treatment or diagnosis is insufficient to state a claim of deliberate indifference under the Eighth Amendment.  *Hix v. Tenn. Dept. of Corrections*, 196 Fed. Appx. 350, 357 (6th Cir. 2006); *see also Apanovitch v. Wilkinson*, 32 Fed. Appx. 704, 707 (6th Cir. 2002); *Durham v. Nu'Man*, 97 F.3d 862, 868-69 (6th Cir. 1996).   The only ailment that Defendant Joiner is alleged to have observed at the time she examined Plaintiff was his unsettled stomach, for which she prescribed medication.

Plaintiff argues that Defendant Joiner should be held liable because his health "rapidly declined" after his visit with her, leading to more severe stomach ache and

nausea, (Doc. 3 at ¶¶23, 25) which symptoms he describes in his memorandum in opposition as "similar to the flu." (Doc. 43 at 2). However, Plaintiff's allegations do not indicate or even suggest that Defendant Joiner was ever made aware that his unsettled stomach had progressed into more severe symptoms after her examination on February 8, 2017. Plaintiff alleges that he first reported those symptoms by submitting a "sick call slip" on February 11, 2017, three days after Nurse Joiner examined him, and that he followed up by submitting two additional requests on February 17 and March 1 for additional treatment. (*Id.* at ¶¶25, 31). He states that he received no response to any of the three requests. Notably, Plaintiff does not allege that Nurse Joiner played any role in failing to respond. Because no malevolent intent is alleged or can be ascribed under those circumstances, Nurse Joiner is entitled to judgment on the pleadings.

Just as Plaintiff attempts to add to his allegations against Aramark in his response in opposition to Aramark's motion for judgment, however, he adds new allegations in his response in opposition to Nurse Joiner's motion to dismiss. Plaintiff argues that Joiner could be held liable based upon a new allegation that she "was present" at SOCF on the days that he submitted the requests, and that based on her knowledge of the incident, she *should have known* he required additional treatment. (Doc. 43 at 3). Even if the court were inclined to draw such an inference (or permit Plaintiff leave to amend his complaint to include this new allegation), the undersigned would still recommend that judgment be entered in favor of Nurse Joiner.

Arguably, Plaintiff's allegedly worsening symptoms, which he describes as "similar to the flu", still fall short of satisfying the objective component of an Eighth

Amendment claim. Plaintiff maintains that his claim is based upon the fact that Nurse Joiner was "aware of his exposure to blood and consumption of rat limbs, was sick due to the consumption and, <u>in her opinion</u>, felt that I was over reacting so did not respond…." (Doc. 43 at 3, emphasis added). Even if a reviewing court would find Plaintiff's post-February 8 symptoms come closer to satisfying the objective component of an Eighth Amendment claim, his argument and allegations against Nurse Joiner still fall short of showing the requisite subjective intent, because they reflect her (allegedly misguided, but not malevolent) opinion that her treatment was adequate.

### C. Miscellaneous Claims and Qualified Immunity

Just as Aramark is entitled to judgment on the pleadings insofar as Plaintiff seeks declaratory or injunctive relief, or punitive damages, so too is Defendant Joiner entitled to judgment on those claims for relief, since he has failed to make out any claim against her. Although Plaintiff's primary claim falls under the Eighth Amendment, Defendant Joiner is also entitled to judgment on any *possible* "retaliation" claim that Plaintiff may be asserting, because such a claim is entirely conclusory and does not contain sufficient factual detail.[4] Last but not least, Defendant Joiner is clearly entitled to qualified immunity on all claims filed against her.

### V. Plaintiff's Motion to Further Amend/Correct His Complaint (Doc. 31)

In a motion to amend/correct his complaint that was filed prior to the Defendants'

---

[4]It is not clear that Plaintiff is asserting such a claim against Nurse Joiner or any Defendant. Although Plaintiff's complaint alludes to "retaliation," which Aramark construed as a First Amendment retaliation claim, Plaintiff states in his response to that Defendant's motion to dismiss that he "never claimed a First Amendment Retaliation Claim against Aramark." (Doc. 35 at 2). Nurse Joiner's motion to dismiss does not address any construed "retaliation" claim, and Plaintiff's response in opposition is similarly devoid of discussion of any possible claim against Nurse Joiner under the First Amendment.

respective motions for judgment on the pleadings, Plaintiff sought to amend his complaint in order to identify the first names of Defendants Cullum and Joiner, and to correct the name of Defendant Aramark to Aramark Services Inc., LLC. Because the respective Defendants have all responded fully through their motions, and are entitled to judgment as a matter of law on all claims, Plaintiff's motion is moot.

To the extent that Plaintiff also seeks to add new Defendants and claims, the motion should be denied on grounds that he fails to state any claim. Plaintiff seeks to add two new individuals: "Anthony Cadogan, Deputy Warden of Special Services," and "Nurse Practitioner David Conley." (Doc. 31). The new allegations pertain to the third "glass shard" incident in April 2017. He alleges that Nurse Practitioner Conley assessed Plaintiff's alleged gum injury on April 17, 2017 but did an inadequate and "very plain check up" by looking with a flashlight in Plaintiff's mouth and claiming that "he did not see any injuries to his gum line." Plaintiff alleges that he informed Conley that he believed he also had swallowed a piece of the glass but that "Conley gave Correa the impression he just did not care," and "failed to document the injury." (Doc. 31-1 at 2, ¶11). In an attempt to have "his injuries documented," Plaintiff visited a dentist on May 1, 2017. The dentist documented a small area of white scar tissue approximately three centimeters long, but "noted it was healed and no treatment was needed." (Doc. 31-1 at ¶¶12-13). No allegations appear in the tendered second amended complaint against Deputy Cadogan other than that he was the "Deputy Warden of Special Services" at SOCF.

For the reasons stated above, the treatment provided for the glass shard incident

does not state an Eighth Amendment claim against Nurse Practitioner Conley, and no claim is stated against Deputy Cadogan. Plaintiff's allegations fail to reflect a "serious" medical condition from the cut on his gum, or that either of the newly identified Defendants exhibited the requisite subjective "deliberate indifference" to any serious medical need.

## VI.     Conclusion and Recommendations

Accordingly, **IT IS RECOMMENDED THAT** Defendants' motions for judgment on the pleadings (Docs. 33, 41) should be **GRANTED** and that Plaintiff's motion to further amend/correct his complaint (Doc. 31) should be **DENIED.**     This case should be dismissed with prejudice and closed.


_s/ Stephanie K. Bowman_
Stephanie K. Bowman
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

FRED CORREA,                                        Case No. 1:17-cv-300

              Plaintiff,                              Barrett, J.
                                                    Bowman, M.J.

     v.

MR. CULLUM, et al.,

              Defendants.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN  (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).